**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**BETHANN C.,**

     **Plaintiff,**

**vs.**                                   **CIVIL ACTION NO. 5:23-CV-00209**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER**
**OF SOCIAL SECURITY,**

     **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered March 16, 2023 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 6, 9)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 6), **GRANT** the Defendant's request to affirm the decision of the

Commissioner (ECF No. 9); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on January 8, 2019 alleging her disability began on October 31, 2017 due to anxiety, panic attacks, anxiety-related impaired concentration, anxiety-related sleep disturbances, depression, impaired short-term memory, esophageal ulcers, hiatal hernia, intermittent anemia, anemia related fatigue and weakness, shortness of breath due to anemia, anxiety-related nerve pain in left shoulder, and anxiety-related itching. (Tr. at 20, 384) Her claim was initially denied on December 31, 2019 and upon reconsideration on March 18, 2020 (Tr. at 20, 67-79, 81-92). Thereafter, the Plaintiff filed a written request for hearing on April 17, 2020. (Tr. at 107-108)

An administrative hearing was held on April 7, 2022 before the Honorable Francine A. Serafin, Administrative Law Judge ("ALJ"). (Tr. at 40-66) On June 29, 2022, the ALJ entered an unfavorable decision. (Tr. at 17-39) On January 13, 2023, the Appeals Council denied the Plaintiff's Request for Review, thus the ALJ's decision became the final decision of the Acting Commissioner. (Tr. at 1-6)

On March 15, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed a Brief in Support of Complaint (ECF No. 6); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 9), to which the Plaintiff

filed her Reply Brief (ECF No. 10). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 57 years old as of the alleged onset date, thus considered a "person of advanced age", and later transitioned to a person "closely approaching retirement age" during the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 67) She worked for the West Virginia Department of Health and Human Resources (DHHR) "pretty much all [her] life", which was thirty-two and half years; sometime during her employment she quit work and attended college for three years. (Tr. at 47-48) Her last position with the DHHR was as a supervisor for the Bureau for Child Support Enforcement. (Tr. at 48)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets

or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and

how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion

reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## **Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2022. (Tr. at 23, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of October 31, 2017.[1] (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: bilateral hearing loss; hiatal hernia; gastritis/gastroesophageal reflux disease (GERD); obstructive sleep apnea (OSA); degenerative disc disease (DDD) of the cervical spine; and myalgia. (Id., Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 26, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to

---

[1] The ALJ noted that the Plaintiff reported working at Gabriel Brothers, Inc. as a cashier from November 15, 2017 to December 31, 2017, however, her earnings during that period did not rise to the level of substantial gainful activity. (Tr. at 23)

perform light work except

> she can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and is capable of tolerating occasional exposure to extreme cold, extreme heat, work environments above the moderate noise level (for example typical office noise), and atmospheric conditions as that term is defined in the Selected Characteristics of Occupations as well as workplace hazards such as moving machinery or unprotected heights.

(Tr. at 27, Finding No. 5)

At step four, the ALJ found the Plaintiff is capable of performing her past relevant work as a supervisor case worker. (Tr. at 31, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability since October 31, 2017 through the date of the decision. (Id., Finding No. 7)

## The Plaintiff's Challenges to the Commissioner's Decision

The Plaintiff argues that the ALJ's error committed at the second step of the sequential evaluation process flowed into flawed analyses at steps three and four – specifically, the Plaintiff takes issue with the ALJ's finding the Plaintiff's depression was not a severe impairment (ECF No. 6 at 5, 17). The Plaintiff contends that the ALJ's analyses regarding her mental impairments deviated from the Fourth Circuit's holdings in Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341 (4th Cir. 2023), Arakas v. Commissioner, 983, F.3d 83 (4th Cir. 2020), and under Social Security Ruling (SSR) 16-3p to the extent that the ALJ failed to appreciate the Plaintiff may rely upon her subjective statements to substantiate her depressive symptoms because they do not produce objective evidence. (Id. at 13-15) The Plaintiff points out that her hearing testimony concerning her subjective complaints is corroborated by her application for benefits as well as the medical record; the Plaintiff further contends that the ALJ mischaracterized the Plaintiff's reported

activities of daily living, which actually substantiate depressive symptoms. (Id. at 16-18) She endorsed nearly every symptom of depression, had received treatment for it for several years, and had the ALJ properly applied her subjective symptoms properly, she would not have been capable of performing her past relevant work due to stress. (Id. at 18-19) Because of these errors, the Plaintiff asks this Court to reverse the Commissioner's decision and remand with instructions to award benefits. (Id. at 19-20)

In response, the Commissioner argues that the ALJ properly evaluated the Plaintiff's symptoms, and the Plaintiff's comparison of her case to the one presented in Shelley C. are materially distinguishable. (ECF No. 9 at 7-9) For example, the ALJ here acknowledged the Plaintiff's alleged symptoms, and noted that the medical record showed improvement with medication, per her own reports to providers, which included her activities of daily living. (Id. at 9-10, 11-12)) The ALJ also noted that the Plaintiff often had normal mental status examinations; even both prior administrative medical findings found she had no severe mental impairment. (Id. at 10) The ALJ did not dismiss the Plaintiff's subjective complaints based entirely upon the belief that they were not corroborated by the medical evidence or require they be validated by objective evidence – the ALJ balanced all the relevant evidence in her analysis and ultimately found the Plaintiff's symptoms were not as disabling as alleged. (Id. at 10-12) In short, the Plaintiff is asking this Court to impermissibly substitute its judgment for that of the ALJ. (Id. at 12-13) Because the final decision is supported by substantial evidence, it should be affirmed. (Id. at 14)

In her reply brief, the Plaintiff reasserts that the ALJ improperly discounted the Plaintiff's subjective statements in favor of objective evidence, contrary to the holding in Shelley C. (ECF No. 10).

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**The Medical Record:**

The Plaintiff was prescribed medication for depression by her primary care providers prior to and during the relevant period (*e.g.*, Tr. at 683-685, 681, 654, 617, 619, 625). During the relevant period, the Plaintiff was seen by a family healthcare provider for routine refills and labs and continued on her current medication regime (Tr. at 624-625, 628-629, 632, 636); *see also* Tr. at 700 (her provider noted that she "increased the Plaintiff's sertraline last time with patient reporting that it seems to be working well for her.")). Mental status findings throughout the record revealed good judgment, normal mood and affect, and normal memory (*e.g.*, Tr. at 572, 578, 583, 604, 701, 705). Even when she reported a depressed mood and lacking motivation, she still reported that she has interests and is active; a good mood and appetite; no significant weight changes; sleeping well; energy good; positive sense of self; no difficulty concentrating; no noticeable lethargy or agitation; no suicidal thoughts; no psychosis; no excessive mood shifts; no mania; no substance problems; and no difficulty functioning (Tr. at 717, 725).

Consultative Examination:

On December 11, 2019, Elizabeth Bodkin, M.A., performed a consultative neuropsychological screening (Tr. at 561-567). The Plaintiff stated she was applying for benefits

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. Therefore, for purposes of this Proposed Findings and Recommendation, the focus is on the Plaintiff's mental impairments.

because she "battled depression my whole life. I get so nervous over everything. I've got scars on my arms and stomach when I'm nervous." (Tr. at 561) She also reported excessive anxiety and worry along with recurrent major depressive episodes since approximately 1999 (Tr. at 562). She last saw someone in Bluefield twenty years ago, but was not currently receiving any mental health treatment, and had been hospitalized at Beckley ARH for a week in 2008 due to anxiety and depression (Id.). Mental status examination revealed depressed mood and restricted affect; however, other findings included being cooperative and friendly, having good eye contact, normal judgment, good insight, normal psychomotor behavior, normal memory, normal concentration, normal persistence, normal pace, and normal social functioning (Tr. at 564-565). The Plaintiff also reported that she goes to stores and runs errands weekly, dines out occasionally, occasionally visits with friends or family, regularly talks on the phone, has one close friend, keeps medical appointments, maintains a checking account, pays bills, able to perform all self-care duties independently, plays games on her phone, and does household chores including laundry, dishes, sweeping, and cooking (Tr. at 565). Ms. Bodkin diagnosed the Plaintiff with generalized anxiety disorder and major depressive disorder, recurrent, moderate. (Id.)

Prior Administrative Medical Findings:

On December 17, 2019, Rosemary L. Smith, Psy.D., reviewed the record at the initial level and found that the Plaintiff had no severe mental impairment (Tr. at 74-75). On February 21, 2020, John Todd, Ph.D., affirmed Dr. Smith's opinion on reconsideration (Tr. at 87).

**Plaintiff's Function Reports:**

In her Function Report submitted in October 2019, the Plaintiff stated she suffered from anxiety and depression; had very irregular sleep patterns; had a hard time remembering "anything";

and when she had episodes of anxiety, her left shoulder "hurts really bad" (Tr. at 400). Regarding her daily activities, she said she watched tv, takes care of her pets, does a little housework, though she is always behind on laundry because she doesn't feel like doing it due to her depression (Tr. at 401) She reported she did not need help with chores, just lacks the desire to complete them (Tr. at 402). She reported not enjoying being around people, and "maybe once every two months" she will shop for household items, clothes or shoes, but will go get groceries when needed – she shops both in stores and online (Tr. at 403). She reported only spending time with her sister and her granddaughter and will run errands once a month. (Tr. at 404) Though she stated she cannot pay attention "long at all", she is able to follow written and spoken instructions "very well" (Tr. at 405). She reported being able to handle stress "not well at all"; she stated, "I often think about my death and/or what I would do if something were to happen to one of my children." (Tr. at 406)

**The Administrative Hearing:**

<u>The Plaintiff's Testimony:</u>

The Plaintiff testified that maybe a year prior to having to quit her supervisory position at the DHHR, she was having trouble remembering things and falling asleep at work. (Tr. at 48-49) She could not answer questions that she should have known. (<u>Id</u>.) She was able to continue working under those conditions due to her excellent staff at the Pineville, Wyoming County office, but not at the Welch, McDowell County office, because the employees there were not as well trained as the those in Pineville. (Tr. at 48-50) She stated the employees at the Pineville office just let her sleep, though she did not remember falling asleep at the Welch office. (Tr. at 54) She stated that she had battled depression "all my life, off and on"; she testified that she had "horrible" sleep patterns, earning a reputation called "Bething in a car." (Tr. at 51-52) She described "Bething in a

car" as after driving to work or home, she would fall asleep in her car for an hour or two; she did this about two to three times a week. (Tr. at 52) She endorsed feeling worthless for "probably her whole life." (Tr. at 55) When asked if she had hobbies, she said "[m]y dogs"; she used to go out with friends and walk, but doesn't do this anymore because she wants to be alone. (Tr. at 55-56)

<u>The Vocational Expert's (VE) Testimony:</u>

The VE classified the Plaintiff's past relevant work as a supervisor case worker as sedentary and skilled. (Tr. at 61) In response to the controlling RFC, *supra*, the VE testified that the hypothetical individual could still perform the Plaintiff's past relevant work. (Tr. at 62-63) The VE further testified that if the individual could only maintain concentration for two hours at a time before needing a break and also limited to a "low stress" job, the individual could not perform the Plaintiff's past relevant work. (Tr. at 63) The VE also testified that if the individual were off task more than 15% of the time, all work would be eliminated . (Tr. at 63-64)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

Determining Severe Impairment:

As an initial matter, the regulations provide that a "severe" impairment is one "which significantly limits your physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(c); see also Id. § 404.1521(a). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." Id. § 404.1521(b). Such examples of these activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, coworkers and usual work situations; and (6) dealing with changes in a routine work setting. Id. Contrariwise, an impairment may be considered " 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

In this case, the ALJ noted that the Plaintiff's primary care records indicated she was prescribed medication for depression, while other medical records reported mental status findings

suggesting good judgment, normal mood and affect and normal memory. (Tr. at 24, 616-694, 572, 578, 583, 604, 701, 705, 706, 715[3]) The ALJ also considered Ms. Bodkin's neuropsychological evaluation performed on December 11, 2019, described *supra* (Tr. at 24, 561-567). The ALJ determined that Ms. Bodkin's diagnoses of generalized anxiety disorder and major depressive disorder

> appear based on the claimant's subjective complaints and are inconsistent with her reported activities of daily living. For instance, she reported that she goes to store and runs errands weekly, dines out occasionally, occasionally visits with friends or family, regularly talks on the phone, has one close friend, keeps medical appointments, maintains a checking account, pays bills, able to perform all self-care duties independently, plays games on her phone, and does household chores including laundry, dishes, sweeping, and cooking.

(Id.)

In support of her finding the Plaintiff's mental impairments nonsevere, the ALJ found that based on Ms. Bodkin's findings, the Plaintiff exhibited no limitations in her abilities in understanding, remembering, or applying information, and in the remaining three broad areas of functioning, mild limitations. (Tr. at 25, 561-567)

From the aforementioned, the undersigned **FINDS** the ALJ's determination that the Plaintiff's mental impairments were nonsevere is supported by substantial evidence – because the ALJ concluded from the evidence of record that the Plaintiff's mental impairments, singly or in

---

[3] The undersigned notes this latter citation to the record may be a scrivener's error because on that visit date, on June 15, 2021, the provider noted the Plaintiff exhibited "good mood; appetite good; . . . positive sense of self; no difficulty concentrating; . . . no difficulty functioning" (Tr. at 717); a treatment record dated March 19, 2021 indicated the Plaintiff "has interests and is active; mood good; appetite good; . . . sleeping well; energy good; positive sense of self; no difficulty concentrating . . . no difficulty functioning." (Tr. at 725)

combination, caused no more than minimal limitation in her ability to perform basic work activities. (Tr. at 25)

Evaluation of Symptoms in Disability Claims:

As noted *supra*, the Plaintiff also asserts that the ALJ's analysis of her subjective complaints is unsupported by substantial evidence because it did not comply with the factors enumerated under SSR 16-3p, and deviated from the standard of review of subjective symptoms set forth in Shelley C., due to the lack the objective medical evidence to support same. (ECF No. 6 at 14-19)

SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or

examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

As an initial matter, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his

16

. . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

The Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

In the written decision, the ALJ noted:

17

the claimant testified that her depression caused her to stop working at the West Virginia Dept of Health and Human Resources, after working there 33 years. She said she was in a supervisory position and had issues due to being forgetful and falling asleep at work. She said she feels hopeless and has "horrible sleep patterns." She stated that after work she would drive to her home and go to sleep in her car for one to two hours because she could not move and this occurred at least 2-3 times per week. She stated that she is not motivated to do anything. She said she would fall asleep at work at least once per week. She said she has difficulty staying awake when driving and has had to pull off the road and sleep. She testified wanting to be alone, experiencing fatigue, having weakness, and sometimes forgetting to take her medication.

(Tr. at 28) After properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id.)

As noted *supra*, earlier in the decision, the ALJ acknowledged the Plaintiff had received medication for her depression from her primary care providers, and the primary care records repeatedly revealed the Plaintiff displayed good judgment, normal mood and affect, and normal memory.[4] (Tr. at 24) The ALJ noted the opinion evidence from the State agency psychologists, *supra*, both of whom determined the Plaintiff did not have a severe mental impairment based on the record. (Tr. at 30, 67-79, 81-92) The ALJ found both opinions persuasive because the consultants provided explanation in support of their opinions, and also because the opinions are consistent with the "largely normal mental status findings including normal mood and affect,

---

[4] See 20 C.F.R. § 404.1529(c)(iv)-(v) (evaluation of symptoms includes consideration of effectiveness of medication and treatment); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.")

normal memory, and normal concentration." (Tr. at 30, 561-567, 571-588, 589-606, 695-713, 714-726)[5] The ALJ also found the opinions are consistent with the Plaintiff's "high functioning daily activities." (Tr. at 30, 561-567)

While the Plaintiff asserts that the ALJ "badly miss characterizes" [*sic*] her activities of daily living (See ECF No. 6 at 16), it is notable that the ALJ's descriptions of her daily activities are gleaned directly from Ms. Bodkin's findings during her examination: for instance, the Plaintiff represented to Ms. Bodkin that she "got to the store and runs errands weekly alone", and in her Function Report, submitted two months prior, she reported shopping "very seldom – maybe once every two months, except for groceries, I shop as needed for groceries" and runs errands "once a month"; and although the Plaintiff reported to Ms. Bodkin that she "dines out occasionally" and "occasionally visits with friends or family", she stated in her Function Report that she "only" spends time with her sister and granddaughter, and indicated she does so once a month (See, Tr. at 565, and Tr. at 403, 404). The Plaintiff also complains the ALJ's finding the Plaintiff's memory was normal conflicts with her statements in her Function Report and hearing testimony, however, again, the ALJ noted numerous instances from the record, but especially from Ms. Bodkin's evaluation, showing the Plaintiff's memory was normal. (See, Tr. at 564, and Tr. at 405, 58) See, 20 C.F.R. § 404.1529(c)(4) ("We will consider your statements in relation to the objective medical evidence and other evidence" . . . . and "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of

---

[5] The ALJ referenced Ms. Bodkin's evaluation report from December 2019; progress notes from Appalachian Gastroenterology dated October 1, 2014 through June 2, 2015; office treatment records from the Plaintiff's OB/GYN at Access Health dated August 5, 2013 through May 30, 2019; and office treatment records from Tug River Health Association/Catterson Health Center dated January 6, 2012 through February 5, 2021 and March 19, 2021 through June 15, 2021.

the evidence."); see also, SSR 16-9-3p, 2016 WL 1119029, at *8. An ALJ will not reject a claimant's statements "solely because the available objective medical evidence does not substantiate" them. 20 C.F.R. § 404.1529(c)(2). Rather, "[a] report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors [an ALJ] must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *5.

The foregoing demonstrates obvious conflicting evidence concerning the Plaintiff's subjective complaints. It is the ALJ's exclusive duty to resolve such conflicts, and the issue before the Court is not whether the Plaintiff is disabled, but whether the ALJ's finding is supported by substantial evidence and was reached based upon a correct application of the relevant law. [6] In this case, the ALJ provided a reasonable narrative that included not only the Plaintiff's testimony, but also the objective medical evidence of record and other evidence of record. In short, the ALJ provided a fairly thorough and adequate review of the Plaintiff's subjective complaints, reconciled them with the medical and other evidence of record, and ultimately determined that her symptoms did not limit her to the extent alleged.

To the extent the Plaintiff challenges the ALJ's analysis of her alleged limitations from mental impairments as contrary to the Fourth Circuit's holding in Shelley C., the undersigned notes that the errors found therein are simply not present in this case: for starters, the claimant in that case had *severe* mental impairments that were fully, if not completely, corroborated by the medical

---

[6] Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." (quoting Craig v. Chater, 76 F.3d 585, 589 4th Cir. 1996)).

evidence. Moreover, unlike in *this* case, the ALJ therein "dismiss[ed] Shelley C.'s subjective complaints based *entirely* upon the belief that they were not corroborated by the record's medical evidence." See, Shelley C., 61 F.4th at 360 (*emphasis* in original). Additionally, the ALJ in Shelley C. improperly concluded that that the claimant's alleged limitations were inconsistent with her medical treatment history and mental status examinations because the medical record showed otherwise. Significantly, unlike in Shelley C., there is *no* medical opinion of record suggesting that the Plaintiff has severe mental impairments or experiences significant functioning deficits due to any mental impairment. Indeed, what is notable in this case is that the ALJ not only considered the relevant medical evidence, but also, and especially, focused on the Plaintiff's *own* reports of her symptoms to her providers as well as to the consulting examiner – the Plaintiff's *own* statements provided the bulk of the conflicts in the evidence before the ALJ.

To the extent the Plaintiff alleges the ALJ erred at the fourth step because the vocational expert's testimony corroborate a finding that the Plaintiff is unable to perform her past relevant work due to stress, as discussed above, the ALJ properly evaluated the Plaintiff's subjective complaints. Thus, the ALJ complied with her obligation under Section 404.1545(a) and SSR 96-8p, as she not only discussed all the relevant evidence as it related to the Plaintiff's limitations, but also adequately explained why they did not impair her ability to perform past relevant work.

At bottom, it is clear that the ALJ did not select only those portions from the objective medical evidence or other evidence that failed to support the Plaintiff's allegations of disabling impairments – she considered her testimony and other evidence, both supporting and non-supporting, and ultimately determined the Plaintiff's alleged impairments were not disabling.

Accordingly, the undersigned **FINDS** that the ALJ did a proper evaluation of the Plaintiff's

subjective complaints in compliance with the pertinent legal authority. The undersigned further **FINDS** the final decision of the Commissioner denying benefits is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for remand (ECF No. 6), **GRANT** the Defendant's request to affirm the decision (ECF No. 9), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933

(1986); <u>Wright v. Collins</u>, 766 F.2d 841 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: September 14, 2023.



Omar J. Aboulhosn
United States Magistrate Judge